Filed 6/15/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DIEGO DENOVA GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B310824<br>(Super. Ct. No. 2012023734)<br>(Ventura County) |

      "I'm screwed." "I can't see my life in Mexico." These were appellant's contemporaneous statements to himself on the day he pled guilty to "sale/transportation/offer to sell" oxycodone in 2012. Both his attorney and the trial court advised him at that time that he would be deported based upon his negotiated plea. Seven years later, his contemporaneous remarks to himself and the two warnings sprang to life as he found himself the subject of deportation proceedings. Appellant did not want to live in Mexico in 2012. He does not want to live in Mexico now. We do not fault appellant for wanting to stay in the United States. But, as we explain, we do fault him for appealing the trial court's order denying his motion to vacate the plea on the asserted ground that

he did not meaningfully understand the immigration consequences of his plea.  (Pen. Code, § 1473.7.)[1]  He knew exactly what he was doing in 2012.  The trial court factually so found based upon live-witness testimony.  This is a poor platform upon which to predicate an appeal.  We will affirm.

FACTS AND PROCEDURAL HISTORY

In 2012, appellant was charged with felony counts of sale/transportation/offer to sell a controlled substance (count 1) and possession for sale of a controlled substance (count 2).  (Health & Saf. Code, §§ 11352, subd. (a), 11351.)  He pled guilty to count 1, offer to sell oxycodone in exchange for 36 months formal probation with the service of 180 days in county jail.  Count 2 was dismissed pursuant to the plea agreement.

*Felony Disposition Statement and Plea Proceedings*

At the time of his plea, appellant signed a document entitled, "Felony Disposition Statement," which provides in part: "My attorney has explained to me the direct and indirect consequences of this plea, including the maximum possible sentence.  I understand the following consequences could result from my plea:  [¶] . . . [¶] If I am not a citizen, I could be deported, excluded from the United States or denied naturalization.  (Pen. Code, § 1016.5.)  If I am not a citizen and am pleading guilty to an aggravated felony, conspiracy, a controlled substance offense, a firearm offense, . . . or a domestic violence offense, I will be deported, excluded from the United States, and denied naturalization.  (8 U.S.C. §§ 1101(a)(43), 1182, 1227.)"

Appellant initialed each section and signed the document acknowledging that he discussed with his attorney and

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

understood the consequences of his plea. Appellant's attorney also signed the document acknowledging that he explained the direct and indirect consequences of this plea to appellant and was satisfied appellant understood them. When the trial court asked appellant whether he understood the information in the plea form, appellant said that he did.

*Section 1473.7 Motion to Vacate/Hearing*

In December 2019, appellant was in the process of deportation proceedings. He filed a motion to vacate his guilty plea based on ineffective assistance of counsel. He provided a declaration that stated, "I am a non-US citizen currently [living] in the United States. . . . [¶] [¶] . . . When I first met with [counsel], he suggested I plead guilty right away so 'everything can just be over with.' . . . [¶] [Counsel] did not ask about my immigration status when I met with him. At the time of completing the plea form I do not recall discussing with [counsel] specific immigration consequences of my plea. I was not advised by [counsel] that this conviction would be a bar to naturalization, and I could be deported and denied readmission to the United States. [¶] [Counsel] did not recommend that I consult with an immigration attorney, and I do not recall [counsel] suggesting a plea to an alternative lesser charge to avoid the serious immigration consequences I am now facing. [¶] [¶] Had I been properly informed I would have sought a different disposition or gone to trial."

At the hearing on the motion to vacate appellant's plea, appellant's "plea counsel" testified that he did not independently recall the case but retrieved his file from storage that contained his notes. He testified it was his practice to identify his client's immigration status and if unclear, he would proceed as if the

3

client was not a citizen, which he did in this case. Counsel testified that he spoke with appellant's immigration attorney in 2012.[2] He also testified that it was his practice in 2012 to refer to the Immigration Legal Resource Center chart (ILRC) that summarized the immigration consequences for a specific charge and then discuss it with his client. He reviewed the chart with appellant and advised him prior to his plea that he would be "deportable." Finally, counsel testified that it is his practice to review the Felony Disposition Statement with the client, read each marked section "verbatim," and ask whether the client has any questions, which plea counsel did in this case as confirmed by his signature on the statement.

Contrary to his declaration, appellant initially testified that he did recall counsel asking about his citizenship status, but counsel did not advise him of alternate pleas or immigration consequences of his guilty plea. He also testified that counsel did not review the Felony Disposition Statement with him, and instead, told him to sign the plea "so we can get over this." But later during his testimony, he acknowledged that to "[his] recollection," counsel did explain each section of the plea form that he initialed and signed. On cross examination and over the objection of his new attorney, appellant admitted that he pled guilty even though he knew he was going to be deported. He also acknowledged that when he got home after the plea hearing, he thought about it, and said to himself: "I'm screwed." "I can't see my life in Mexico."

---

[2] The record is silent on what appellant's immigration attorney told appellant's "plea counsel."

4

## TRIAL COURT RULING

The trial court denied appellant's motion to vacate his conviction. In a six-page ruling, it factually found appellant's credibility to be "severely lacking," and his declaration was "deceptively phrased" to mislead the court that counsel had not recommended appellant meet with an immigration attorney when counsel had, in fact, consulted with appellant's immigration attorney. The trial court found counsel's testimony "credible" and consistent with his declaration. It also found "no persuasive contemporaneous evidence to substantiate [appellant's] assertion that he was unaware of the potential adverse immigration consequences at the time he entered his plea." To the contrary, the trial court found the record "strongly supports" the conclusion that appellant was "well advised and fully understood the likelihood that he would be deported."

## DISCUSSION

### *Section 1473.7 and the Standards of Review*

Pursuant to section 1473.7, a person who is no longer in criminal custody may file a motion to vacate a conviction or sentence where "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (*Id.*, subd. (a)(1).) "A successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the actual or potential immigration consequences of a plea. [Citation.]" (*People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*).)

5

In 2018, the Legislature amended section 1473.7 to clarify that "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1); Stats. 2018, ch. 825, § 2.) (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 661; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1010-1011.)

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529-530.)

Our Supreme Court recently endorsed a limited form of independent standard of review of a trial court's ruling on a section 1473.7 motion to vacate. (*Vivar*, *supra*, 11 Cal.5th at pp. 524-528.) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. [Citation.]'" (*Id.* at p. 527.) Independent review is not the equivalent of de novo review. "An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Ibid.*) Instead, appellate courts should give particular deference to factual findings and credibility determinations based on the trial court's

6

personal observations of witnesses. (*Id.* at pp. 527-528.) When the facts derive entirely from written declarations and other documents, the appellate court need not defer to the trial court's findings because the trial court and appellate court are in the same position when interpreting a cold record in a section 1473.7 proceeding. (*Vivar*, at p. 528.) "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Ibid.*)

*The Trial Court Did Not Err in Denying Appellant's Motion*

Appellant has many theories why he did not understand the immigration consequences of his plea, and if he had, he would have rejected it. The record does not support appellant's contention.

The trial court did not find that appellant suffered from a cognitive impairment due to an injury he sustained in 2010. In addition, the trial court did not find appellant was unaware that "the drug plea constituted pleading to an 'aggravated felony'" that would trigger mandatory deportation. The plain and unambiguous language contained in the Felony Disposition Statement states: "If I am not a citizen and am pleading guilty to . . . *a controlled substance offense, . . . I will be deported.*" (Italics added.) And, his attorney that he reviewed the 2012 ILRC chart with appellant, which advised a violation of Health and Safety Code section 11352 was an aggravated felony.

APPELLATE REVIEW

Even on independent review, appellant's contentions would fail. Appellant acknowledged that after he got home from the plea proceeding, he thought, "I'm screwed" because he could not see his life in Mexico. At the time of the plea proceeding, appellant had lived in the United States for approximately seven years with his family. His contemplation of his life in Mexico,

7

contemporaneous with his guilty plea, is persuasive evidence appellant knew he would be deported. Furthermore, appellant admitted that he pled guilty despite knowing he would be deported, but he only did so upon advice of counsel. This may have been good advice. Appellant avoided being sentenced to state prison.

Appellant also contends that it is reasonably probable that had he understood the immigration consequences of his plea, he would have "held out for a better deal" or "taken the case to trial." These claims are conclusional. He did not provide any evidence to suggest the district attorney's office would have considered an immigration-neutral disposition. Indeed, counsel testified that based on his assessment, both at the time of the plea and at the hearing on the motion to vacate, "the case against [appellant] was very strong."

Also missing is a declaration from his immigration attorney from 2012 to corroborate his contention that she met with appellant's counsel to "ensure that any plea entered . . . would not lead to [appellant's] deportation." "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant to corroborate such assertions with "'objective evidence.'"" (*Vivar*, *supra*, 11 Cal.5th at p. 530; *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1074.)

This is particularly true where, as here, the trial court found appellant's credibility "severely lacking," while counsel's testimony was "credible." As *Vivar* instructs, these "factual determinations that are based on "'the credibility of witnesses the [superior court] heard and observed'" are entitled to particular deference, even though courts reviewing such claims" may reach

8

a different conclusion based on its independent examination of the evidence.  (*Vivar*, *supra*, 11 Cal.5th at p. 527.)  "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  (*Lee v. United States* (2017) __ U.S. __, __ [137 S.Ct. 1958, 1967].)  That is what happened here.

DISPOSITION

The order denying the motion pursuant to section 1473.7 is affirmed.

CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

Benjamin F. Coats, Judge
Superior Court County of Ventura

_____

Andre L. Verdun, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.